UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID McNEES #685766,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                  Case No. 1:19-cv-121

GREGORY TORREY, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by a prisoner incarcerated with the Michigan Department of Corrections. Plaintiff alleges that Defendants Food Service Director Gregory Torrey and Food Service Supervisor Joshua VanWyck retaliated against him in violation of the First Amendment.

Presently before me is Defendants' Motion for Summary Judgment. (ECF No. 83.) Plaintiff has filed a response. Defendants elected not to reply. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

**I.   Background**

Plaintiff was hired to work in Food Service at Lakeland Correctional Facility (LCF) in February 2018 as a server. (ECF No. 84-3.) As of August 2018, Plaintiff was working as a vegan cook with a pay rate of 32.5 cents per hour. He was assigned five 8.25 hour shifts per week for a total of 41.25 hours. (ECF No. 84-6.) In his First Amended Complaint, Plaintiff alleged that on two separate occasions in August and September 2018, Defendant Torrey ordered him to use unsanitary equipment to prepare and serve vegan meals, and that after the second incident, Plaintiff

told Torrey that he intended to "seek an intervention" from Torrey's supervisor, LCF Deputy Warden Morrison (DW Morrison). (ECF No. 41 at PageID.205.) Plaintiff subsequently confirmed that the two incidents occurred in August. (ECF No. 84-14 at PageID.606.) In early September 2018, after Plaintiff and another prisoner wrote a letter to DW Morrison about the issue, Defendant Torrey entered the kitchen and indicated that he had just met with DW Morrison about the letter. Torrey exclaimed that he ran Food Service, that Plaintiff and the other prisoner should not have written the letter, and that he would get rid of them. (ECF No. 94-3; ECF No. 94-7 at PageID.695.)

On November 2, 2018, Torrey issued Plaintiff a misconduct ticket for possession of stolen property/theft. (ECF No. 41-1.) Torrey wrote that Plaintiff had been observed drinking milk in the religious kitchen and that milk was not allowed in that room because it was not kosher. Torrey also stated that Plaintiff was not authorized to have milk. (*Id.*) Plaintiff was removed from his work assignment pending the outcome of the misconduct hearing. On November 17, 2018, after a hearing on the misconduct ticket, the hearing officer found Plaintiff not guilty. The hearing officer explained his finding as follows:

> Video of the incident was reviewed. At no time did this Hearings Officer view prisoner McNees drink milk or possess milk during the alleged time of misconduct. Prisoner McNees is observed drinking a carton of orange juice. Prisoner McNees was charged with theft for drinking a milk without authorization, which he clearly did not do. This misconduct is not based on fact and therefore the prisoner is found not Guilty.

(ECF No. 41-2.)

Plaintiff was paid back pay for the time he missed from work while laid-in. (ECF No. 84-14 at PageID.612.) During that time, however, another prisoner had been hired to fill his vegan cook position. Plaintiff alleges that he was thus classified back to Food Service as a vegan food server, a position that Plaintiff alleges provided less pay and fewer hours. (ECF No. 41 at

PageID.206.) Plaintiff claims that he was not returned to his previous vegan cook position until March 5, 2019. (*Id.*)

Plaintiff filed his complaint in this action on February 14, 2019. On June 5, 2019, non-Defendant Quigley issued Plaintiff a Prisoner Program and Work Assignment Evaluation, commonly referred to as a CSJ-363 (363). Quigley assigned Plaintiff an average score of 32, and in the comments section directed him to "[j]ust focus on keeping the vegan room food code compliant." (ECF No. 41-3.) About two weeks later, on June 20, 2019, Defendant Torrey issued Plaintiff a 363, assigning Plaintiff a below-average score of 17. Torrey wrote:

> Upon inspection of the [Religious Kitchen] this morning, I found that the Hand sink was blocked by: a pan of food sitting on it, a box of Styrofoam cups in front of it, and the prep table shoved too close to the sink. We are required by the Food Code to have easy access to hand washing equipment. This is [sic] has been addressed verbally many times.

(ECF No. 84-12.) The below-average score resulted in a 30-day conditional employment period and a reduction of pay to entry level. (*Id.*) The other prisoner with whom Plaintiff was working that day was also issued a 363 for 30-day conditional employment. (ECF No. 84-5 at PageID.568.)

On August 10 and 11, 2019, Plaintiff left work without punching out for the day. (ECF No. 41 at PageID.208.) Plaintiff alleges that on or about August 17, 2019, he requested non-Defendant Quigley or Defendant VanWyck to sign his time card to approve overtime that he had worked in the LCF kitchen. During the conversation, VanWyck noticed that Plaintiff had worked over 13 hours on both August 10 and 11 and asked Plaintiff "what the deal was" on those two days. Plaintiff advised VanWyck that he had left work at his regular time on those two days but had forgotten to punch out and was "unsure as to who had punched out on his time card." (*Id.*) Plaintiff alleges that he asked VanWyck if he would correct the time card to reflect the actual hours worked, and VanWyck responded, "Don't worry about it, I've got you." (*Id.*)

On August 21, 2019, Plaintiff spoke to Torrey about the lack of clean rags to clean the kitchen and commented that it "presented a sanitation issue." Plaintiff claims that Torrey, acting as if Plaintiff had threatened him with another grievance, responded, "Oh, is this what you're going to do now." (*Id.* at PageID.208–09.) Later that same day, VanWyck issued Plaintiff a misconduct ticket for being out of place, possessing forged documents, forgery, possessing stolen property, and theft, based on Plaintiff's failure to punch out and his alleged attempt to claim time/pay for which he did not work. (ECF No. 41-6.) Plaintiff claims that when he saw VanWyck a few days later, VanWyck told him, "I didn't want to write it, but Torrey told me to do it." (ECF No. 41 at PageID.210.) On September 3, 2019, following a hearing on the misconduct ticket, the hearing officer dismissed the charges due to lack of supporting evidence. (ECF No. 41-8.) Plaintiff claims that following the dismissal of the misconduct ticket, he was not returned to his kitchen position, but instead was given a much lower paying unit porter position. (ECF No. 41 at PageID.211.) However, Plaintiff admitted that he elected to go to the porter position to avoid "getting more retaliation" and "make it easier on everybody." (ECF No. 84-14.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.   Discussion

#### A.   Retaliation

A plaintiff must prove the following elements to establish a prima facie case of retaliation: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus–X*, 175 F.3d at 399; *see Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir.2001).

Plaintiff's remaining claims in this case are: (1) Defendant Torrey retaliated against Plaintiff in November 2018 for complaining to DW Morrison by issuing a false misconduct ticket; (2) Torrey refused to return Plaintiff to his vegan cook position after Plaintiff was found not guilty on the misconduct ticket; (3) Defendant Torrey retaliated against Plaintiff in June 2019 for filing the instant lawsuit by issuing Plaintiff a negative 363; and (4) Torrey and Defendant VanWyck retaliated against Plaintiff for filing the instant lawsuit and complaining about the lack of cleaning rags by issuing a false misconduct ticket on August 21, 2019.

1. **November 2, 2018 Misconduct**

Plaintiff has presented sufficient evidence to establish the first two elements of his claim. First, although Defendant Torrey denies that he was called into DW Morrison's office and Morrison claims he has no recollection of such meeting (ECF No. 84-5 at PageID.566; ECF No. 84-16 at PageID.624), Plaintiff has presented affidavits from other prisoners who claim to have heard Torrey refer to the alleged meeting immediately before threatening to get rid of Plaintiff and the other prisoner. (ECF No. 94-3; ECF No. 94-7.) Second, Torrey does not dispute that a misconduct ticket can constitute adverse action for purposes of a prisoner's retaliation claim. *See Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018).

Plaintiff's evidence also suffices to establish a causal connection. According to Plaintiff, he wrote the letter to DW Morrison in mid-late August, Torrey met with DW Morrison in early September, and Torrey issued the misconduct ticket two months later. The Sixth Circuit has observed that, in some cases, temporal proximity alone "may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (internal quotation marks omitted). The approximate two-month period between Plaintiff's complaint and the adverse action is arguably enough to support causation. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (finding that approximately two-month period was close enough in time to establish a causal connection); *but see Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (holding that two months between the protected conduct and adverse action was insufficient to establish a causal connection "[a]bsent other evidence of retaliation"). In addition, Plaintiff presents evidence that Torrey stated that he would get rid of Plaintiff.[1] But even crediting Plaintiff's evidence as

---

[1] Plaintiff also cites the response to his November 18, 2018 Step-I grievance as evidence of retaliation, but the response provides no such evidence. Instead, the Step I respondent merely wrote

sufficient to establish a prima facie case, Torrey has presented evidence that he would have taken the same action regardless of Plaintiff's protected conduct based on a non-retaliatory reason. (ECF No. 84-5 at PageID.566.) That is, the LCF Food Service Orientation Manual "strictly prohibit[s]" eating and drinking in the food preparation and other areas. (ECF No. 84-9.) Torrey asserts that regardless of whether Plaintiff was drinking orange juice (rather than milk, as he had believed), Plaintiff still violated policy and was not authorized to be drinking orange juice in the religious kitchen, thus providing a non-retaliatory basis for issuing the misconduct ticket. Plaintiff provides no evidence to rebut this assertion, nor does he address it in his response. Thus, Torrey is entitled to summary judgment on this claim.

### 2. Failure to Return to Vegan Cook Position

Contrary to Plaintiff's claim, Torrey has presented evidence that, following his acquittal on the misconduct ticket, Plaintiff was not placed in a position with less pay and fewer hours. Although Plaintiff was assigned to a server position, he was paid at the same rate he had received as a vegan cook, 32.5 cents per hour, and was in fact given more hours.[2] (ECF No. 84-6; ECF No. 84-10.) In addition, Plaintiff was reclassified to a kosher cook, also at his former rate of pay, on December 13, 2018. (ECF No. 84-4; ECF No. 84-11.) Given that Plaintiff was paid at the same rate and received more hours, he fails to show how the failure to return him to his vegan cook position was adverse. In any event, Plaintiff's own testimony shows that Torrey did not single him out for retaliation by failing to hold his vegan cook position open pending the misconduct hearing, as Plaintiff admitted that Torrey "does it to everybody. That's his practice[]." (ECF No. 84-14 at

---

that Torrey had been reminded about PD 03.02.130, but noted that "no retaliation has been found to have occurred." (ECF No. 94-9 at PageID.706.)

[2] Although Plaintiff contends that the rate in Plaintiff's Job Assignment History (ECF No. 84-4) contradicts Torrey's claim in his affidavit that Plaintiff was paid at the rate of 32.5 cents as a server, Plaintiff ignores Torrey's statement that a Work Assignment Memo shows the prisoner's specific rate as written by the Classification Director. (ECF No. 84-5 at PageID.567–68; ECF No. 84-10.)

PageID.616.) In light this evidence, no reasonable jury could conclude that Torrey's failure to hold the vegan cook position open for Plaintiff was motivated by retaliation.

Therefore, I recommend that Torrey is entitled to summary judgment on this claim.

### 3. Negative 363 Evaluation

Plaintiff claims that the negative 363 evaluation that Torrey issued on June 20, 2019—more than four months after Plaintiff filed his complaint—was in retaliation for filing this action. Torrey does not dispute that Plaintiff can demonstrate the first two elements of this claim. Torrey argues, however, that Plaintiff fails to establish the requisite causal connection. I agree.

Torrey states in his affidavit that his duties as Food Service Director including monitoring Food Service employees' compliance with all applicable rules. (ECF No. 84-5 at PageID.566.) Torrey further states that, during Plaintiff's employment in LCF Food Service's religious kitchen, he had to address rule violations on several occasions with Plaintiff. (*Id.* at PageID.568.) Torrey noted this in the June 20, 2019 363 Evaluation. (ECF No. 41-5.) In fact, the prior June—before Plaintiff engaged in any of his alleged protected conduct—Torrey issued Plaintiff a 363 Evaluation assigning a below-average total score and finding several violations. (EF No. 84-7.) Although Plaintiff attaches a June 2018 363 Evaluation to his complaint by D. Strayer, who assigned Plaintiff an above-average score, (ECF No. 41-4), this evaluation, by a different supervisor, fails to demonstrate that Torrey's June 19, 2019 evaluation was retaliatory. It is certainly possible that Torrey and D. Strayer had different standards or expectations for evaluating employees or encountered different circumstances when they conducted their respective inspections. Moreover, in his 363 Evaluation in early June 2019, non-Defendant Quigley reminded Plaintiff to "focus on keeping the vegan room Food Code compliant." (ECF No. 41-3.) Plaintiff asserts that he had never been instructed on the Food Code and had never been provided a copy of Food Code rules and/or regulations. (ECF No. 41 at PageID.207.) But Quigley had pointed out Plaintiff's noncompliance

with the Food Code two weeks before Torrey issued his 363 Evaluation, and if Plaintiff had questions about it, he certainly could have sought guidance from his supervisors. In any event, even if Plaintiff had never received Food Code training or instruction or been provided a copy of the rules and/or regulations, that fact still does not establish a retaliatory motive as it is clear that compliance with the Food Code was expected of Food Service employees. Finally, the fact that Torrey also issued Plaintiff's coworker a 363 for 30-day conditional employment cuts against any inference that the negative 363 was retaliatory.

In short, this claim boils down solely to temporal proximity that is not that close. Moreover, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). In light of the evidence Defendants have presented, Plaintiff fails to create a genuine issue of material fact that Torrey acted with a retaliatory motive in issuing the 363 Evaluation, and Torrey is entitled to summary judgment on this claim.

### 4. August 21, 2019 Misconduct Ticket

Defendants Torrey and VanWyck contend that Plaintiff's final claim fails because the actual evidence contradicts Plaintiff's story. Defendants assert that during his August 17, 2019 conversation with VanWyck, Plaintiff told Van Wyck, "Don't worry about it [I]'ll be under 200 hours for the month," when Van Wyck asked Plaintiff about the discrepancy on his time card. (ECF No. 41-6.) Defendants further assert that video showed that another prisoner, Samuel Pannell, punched out Plaintiff's time card several hours after Plaintiff's shift ended. When confronted with this information, Pannell said that Plaintiff had asked Pannell to punch out his time card so that Plaintiff could receive extra pay. (ECF No. 84-15 at PageID.620; ECF No. 84-17 at PageID.627.) Defendants further assert that, based on his cooperation in the investigation, Pannell was not issued a misconduct ticket, but instead was issued a 363 for a 30-day conditional

9

period of employment. (ECF No. 84-15 at PageID.620; ECF No. 84-18.) In addition, Torrey denies instructing VanWyck to write Plaintiff a misconduct ticket on August 21, 2019. (ECF No. 84-5 at PageID.568.)

In contrast to Defendants' version, Plaintiff alleges that Pannell approached him on August 22, 2019, and told Plaintiff that he had heard LCF kitchen supervisors had issued Plaintiff a misconduct ticket. Plaintiff alleges that when he confirmed that it was true, Pannell told Plaintiff that non-Defendant Quigley had instructed Pannell to punch out Plaintiff's time card on both days and told Pannell not to worry about his job because they were only after Plaintiff. (ECF No. 41 at PageID.209.) Plaintiff submits a declaration from Pannell consistent with Plaintiff's allegations. Defendants assert that Plaintiff's story is implausible as LCF Kitchen Rules prohibit one prison from punching out another prisoner's time card. (ECF No. 84 at PageID.551.) Even so, at this juncture, as implausible as Plaintiff's story may seem to Defendants, an issue of fact remains as to whether Defendants retaliated against Plaintiff given Pannell's declaration and Plaintiff's complaint allegations implicating Defendant Torrey in the issuance of the misconduct ticket. Moreover, it is notable that the misconduct ticket did not mention Pannell or otherwise include information that another prisoner had implicated Plaintiff in attempting to fabricate hours on his time card. A reasonable jury could thus question the veracity of Defendants' version and conclude that Defendants were motivated by retaliation.

Accordingly, I recommend that Defendants' motion be denied with regard to this claim.

### B. Official Capacity Claims

Defendants are entitled to dismissal of Plaintiff's official capacity claims. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046,

1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see Quern. v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)). Moreover, a state official sued in his official capacity is not a "person" subject to suit for money damages under Section 1983. *Will*, 491 U.S. at 70–71.

*Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989), which Plaintiff cites in his response, does address the situation presented here because the court's discussion in that case concerned official capacity suits against employees of a municipality, not a state. The requirement that a plaintiff show "that his injuries were the result of some 'policy or custom' attributable to the governmental entity," *id.* at 1245, applies only to municipal entities and not states. In this regard, the *Leach* court specifically noted that its analysis "applie[d] only in the context of 'local government units which are not considered part of the State for Eleventh Amendment purposes.'" *Id.* at 1245 n.4 (quoting *Monell v. New York Department of Social Services*, 436 U.S. 658, 690 n.54 (1978)).

### IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' Motion for Summary Judgment (ECF No. 83) with regard to the claims against Defendant Torrey based on the November 2, 2018 misconduct ticket, his failure to return Plaintiff to his vegan cook position, and the July 2019 negative 363 evaluation, but **deny** the motion as to the claim against Defendants

Torrey and VanWyck based on the August 21, 2019 misconduct ticket. I further recommend that Plaintiff's official capacity claims be **dismissed**.

Dated: December 22, 2021                                              /s/ Sally J. Berens
                                                                      SALLY J. BERENS
                                                                      U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).